UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY HOUSTON,<br><br>       Plaintiff<br><br>    v.<br><br>PAVILION USA 2020, INC., *et al.*,<br><br>       Defendants. | Civil Action No. 22-00383 (CKK) |

**MEMORANDUM OPINION**
(February 9, 2023)

Plaintiff Gregory Houston ("Plaintiff") filed a Complaint in this case against Defendants Pavilion USA 2020, Inc. ("Pavilion"); Frederick Bush, then-Chairman of the Pavilion Board; and Alan M. Dunn, then-Chief Legal Officer and a Director of the Pavilion Board (collectively, "Defendants") alleging that Bush and Dunn terminated his employment as Pavilion's Chief Executive Officer after calling attention to Bush and Dunn's misconduct. *See* Compl. at 1–2. Plaintiff brings claims of wrongful termination in violation of 41 U.S.C. § 4712, wrongful termination in violation of public policy, and tortious interference with contract. *Id.* at 14–18. Defendants filed the pending [13] Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that Plaintiff has failed to plausibly state a claim under § 4712 because he is not an employee of a government contractor and, for the same reason, Plaintiff has therefore failed to demonstrate subject matter jurisdiction under 28 U.S.C. § 1331. *See* Defs.' Mot. at 8, 12.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for

---

[1] The Court's consideration has focused on the following documents:

1

purposes of this motion, the Court finds that the record is not sufficiently developed to decide the material factual dispute regarding whether Plaintiff is an employee of a government contractor such that he can bring a claim under § 4712, which would be necessary for the Court to have subject matter jurisdiction. Accordingly, the Court DENIES WITHOUT PREJUDICE Defendants' Motion to Dismiss and recommends the parties engage in limited jurisdictional discovery upon a motion by Plaintiff under Federal Rule of Civil Procedure 56(f).

## I. BACKGROUND

The Court does "not accept as true… the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). Additionally, as will be discussed later, the Court does not accept as true the allegations in Plaintiff's Complaint in considering Defendants' factual challenge to the Court's jurisdiction. However, for the purposes of presenting a factual background, the Court recites allegations from Plaintiff's Complaint.

### A. Bid Submitted to the State Department and the Creation of Pavilion

The United States participates in each World's Fair by constructing a pavilion to represent the country. Compl. at 2. On February 16, 2018, the State Department announced a Request for Proposals ("RFP") for a partner to run the United States' participation in the 2020 World Expo in Dubai, United Arab Emirates. *Id.* ¶¶ 8–9. Plaintiff Gregory Houston and Defendant Frederick Bush decided to try to win the RFP. *Id.* ¶ 11. Along with Defendant Alan M. Dunn, they

---

- Pl.'s First Am. Compl. ("Compl."), ECF No. 12;
- Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 13;
- Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 14; and
- Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 15.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

incorporated Big Things Group, LLC ("BTG") on March 9, 2018 to submit a bid to the State Department.  *Id.* ¶ 12.  Thomas Downing also assisted in the bid by lending his expertise in international financial management.  *Id.*  Because the RFP required the use of a 501(c)(3) organization as the primary vehicle for fundraising, the entity Expo Group 2020 was incorporated on April 6, 2018 and applied for 501(c)(3) status.  *Id.* ¶ 18.

The submitted bid designated Bush as Chief Executive Officer, Dunn as External Counsel, and Plaintiff as Deputy Chief Executive Officer.  *Id.* ¶ 15.  Downing was to serve as Chief Financial Officer.  *Id.*  In its bid, BTG stated that it was the prime implementer on behalf of a collaborative consortium and that "upon signing a LOI with the Department of State, all activities… shall commence under Expo Group 2020."  *Id.* ¶ 19.

On May 30, 2018, the State Department issued a Letter of Intent ("LOI") selecting BTG as the successful bidder.  *Id.* ¶ 20 (citing Compl. Ex. 1).  The LOI stated that "[t]his letter initiates the Project Launch phase" and that "Big Things Group may now proceed with fundraising to complete the project."  Compl. Ex. 1.  It continued that the second phase of the project—the construction and participation—"can only begin once Big Things Group has demonstrated that sufficient funding is available to build, operate, and dismantle the Pavilion and the Department has signed a Memorandum of Agreement with the organization."  *Id.*  The LOI also included a set of priority topics for BTG to address, the first of which was whether the names Expo Group 2020 or EG2020 complied with the expo organizer's guidelines.  *Id.*  On June 26, 2018, Expo Group 2020 was renamed Pavilion USA 2020, Inc.  Compl. ¶ 21.

After the LOI was issued, Bush decided that he only wanted to be an independent contractor rather than an employee of Pavilion USA.  *Id.* ¶ 22.  Bush therefore became Chairman of Pavilion's Board of Directors and Plaintiff became President and Chief Executive Officer of

Pavilion. *Id.*

Pavilion began carrying out the functions required by the LOI. *Id.* ¶ 23. Plaintiff was identified by the State Department as the primary contact for the expo's organizers. *Id.* (citing Compl. Ex. 2). Plaintiff allegedly asked the State Department whether it required a formal novation agreement between BTG and Pavilion and was told that was unnecessary. *Id.*

### B. Alleged Mismanagement by Dunn and Bush and Retaliation Against Plaintiff

During 2018, Plaintiff and Downing became concerned that Dunn and Bush were mismanaging the organization to their own benefit. *Id.* ¶ 25. As a result, Downing announced he was resigning on January 16, 2019. *Id.* ¶ 26. He submitted a financial report and a report on contracts and services agreements to the Pavilion Board as a whistleblower, *id.*, and also explained to Plaintiff how Bush and Dunn were enriching themselves with charitable funds at the expense of the organization, *id.* ¶ 27. After Downing's resignation, Plaintiff informed Bush that he intended to retain outside legal counsel to review Downing's reports and disputed transactions and provide an opinion for the Board and the State Department, as was required under the commitments of the bid and in compliance with 41 U.S.C. § 4712(a)(2)(G). *Id.* ¶ 34. Plaintiff also notified Bush in writing that he intended to suspend Dunn pending the consultation with outside counsel. *Id.* ¶ 35. Bush instructed Plaintiff not to hire outside counsel nor suspend Dunn and instead required Plaintiff to confer with Dunn concerning Downing's whistleblower reports. *Id.* ¶ 37. Nevertheless, and despite threats from Dunn, Plaintiff brought Downing's concerns to Independent Directors of the Board (the Board members not including Bush and Dunn) and also sought review by independent outside counsel. *Id.* ¶¶ 36, 40.

Bush and Dunn distributed an altered version of Downing's reports to the Board on January 21, 2019 and instructed Board members not to discuss with Plaintiff. *Id.* ¶ 41. On

4

February 4, 2019, when Plaintiff was in the Middle East on business and without informing him, Bush called a Board of Directors meeting. *Id.* ¶ 43. At that meeting, Bush and Dunn introduced a resolution to terminate Plaintiff's employment and told the present members not to tell Plaintiff they had met. *Id.* The Board failed to approve the resolution for termination. *Id.* ¶ 45. The Independent Directors called for a Board meeting that included Plaintiff. *Id.* ¶ 45. Although Bush agreed to this meeting and scheduled it for February 13, 2019, he concurrently and unilaterally secured the commitment of a long-term personal friend to replace Plaintiff as Chief Executive Officer. *Id.* ¶ 46.

After learning of Downing's departure, the State Department requested a meeting with Pavilion's Board and Plaintiff to discuss governance concerns and fundraising failures. *Id.* ¶ 47. Bush had delayed this meeting until after the February 4, 2019 Board meeting. *Id.* On February 7, 2019, the State Department again reached out to Pavilion's Board regarding setting a meeting. *Id.* ¶ 48.

On February 12, 2019, Dunn ordered Plaintiff to cease all communications with external partners, vendors, and the State Department. *Id.* ¶ 49. At the February 13, 2019 meeting, when Bush again proposed firing Plaintiff, two of the three remaining Independent Directors resigned in protest. *Id.* ¶ 52. Two others had already resigned between late January to early February. *Id.* ¶ 51. The Board, which then consisted of only three members, including Bush and Dunn, terminated Plaintiff. *Id.* ¶ 53.

On April 29, 2019 after additional mismanagement, the State Department revoked the LOI it had previously issued. *Id.* ¶ 57. The State Department began working with and signed federal contracts with two other consortiums to finish the project. *Id.*

### C. Plaintiff's Attempts at Administrative Relief and Present Litigation

On July 20, 2021, Plaintiff filed a complaint with the Inspector General of the State Department according to whistleblower reporting procedures. *Id.* ¶ 58. On September 25, 2021, the Inspector General declined to investigate on jurisdictional grounds. *Id.* ¶ 59. Plaintiff then filed a Complaint in federal court on February 14, 2022. *See generally id.* Defendants filed a [8] Motion to Dismiss on April 13, 2022, which was denied because Plaintiff filed a [12] Amended Complaint.

In his Amended Complaint, Plaintiff brings three claims: (1) Wrongful Termination in Violation of Public Policy against Defendants Pavilion, Bush, and Dunn; (2) Wrongful Termination in Violation of 41 U.S.C. § 4712 against Defendants Pavilion, Bush, and Dunn; and (3) Tortious Interference with Contract and Prospective Advantage against Defendants Bush and Dunn. Defendants filed the pending [13] Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Upon consideration of a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss, "[a] court must dismiss a case when it lacks subject matter jurisdiction." *Sykes v. Dudas*, 573 F. Supp. 2d 191, 198 (D.D.C. 2008). The plaintiff bears the burden of establishing the Court has jurisdiction. *See In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442–43 (D.C. Cir. 1989); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A]

6

complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

## III. DISCUSSION

### A. Defendants Dispute That Pavilion was a Government Contractor, Which Bears on Both Subject Matter Jurisdiction and the Viability of Plaintiff's § 4712 Claim

Plaintiff alleges that his termination violated 41 U.S.C. § 4712, Compl. at 18–20, which protects employees of government contractors who report misconduct related to federal contracts. Among other provisions, the statute states that

> [a]n employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body… information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1). For a claim brought under § 4712 to survive a motion to dismiss, the plaintiff must plausibly allege that (1) he was an employee of a government contractor, subcontractor, grantee, or subgrantee or personal services contractor; (2) he disclosed information that he reasonably believed was evidence of a rule violation related to a federal

7

contract to the required person; and (3) his disclosure was a contributing factor in the action taken against him. *Sargent v. Pompeo*, No. 19-cv-00620 (CJN), 2020 WL 5505361, at *14 (D.D.C. Sept. 11, 2020) (internal quotation and citation omitted); *see also Omwenga v. United Nations Found.*, No. 15-cv-786 (TSC), 2019 WL 4860818, at * 12 (D.D.C. Sept. 30, 2019). Defendants challenge only that Plaintiff failed to meet the first element of this standard—that he was an employee of a government contractor, subcontractor, grantee, or subgrantee or personal services contractor. More specifically, Defendants argue that that Pavilion, of which Plaintiff was an employee, was not a government contractor, and therefore Plaintiff fails to raise a plausible claim under 41 U.S.C. § 4712 necessitating dismissal under Rule 12(b)(6). *See* Defs.' Mot. at 8.

Defendants then argue that because Plaintiff has failed to plead sufficient facts to maintain a § 4712 claim, there is no federal question to satisfy subject matter jurisdiction under 28 U.S.C. § 1331. *See* Defs.' Mot. at 12; *contra* Compl. ¶ 5 ("This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1331…."). As there is no diversity of citizenship to satisfy subject matter jurisdiction under 28 U.S.C. § 1332, *see* Defs.' Mot. at 13, the Court would lack subject matter jurisdiction entirely if Defendants are correct that there is no federal question. Defendants then contend that this Court should not exercise supplemental jurisdiction over Plaintiff's other two claims. *See id.* Taken together, whether this Court has subject matter jurisdiction hinges on the factual dispute of whether Plaintiff falls within the scope of § 4712 as an employee of a government contractor.

### B. Standards Governing a Factual Challenge to Subject Matter Jurisdiction

"When subject-matter jurisdiction is questioned, the court must, of course, satisfy itself of its authority to hear the case." *Prakash v. American University*, 727 F.2d 1174, 1180 (D.C. Cir.

1984).  A defendant can raise either a "facial" or "factual" challenge to a court's jurisdiction.

A facial challenge contests the legal sufficiency of the complaint's jurisdictional allegations.  *See Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (PLF).  Where a "defendant mounts a 'facial' challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party."  *Id.* (citing *I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1188 (D.C Cir. 2003)).

However, where a defendant brings a "factual" challenge to the court's jurisdiction, "the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant," but instead "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss."  *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000); *see also Erby*, 424 F. Supp. 2d at 183 ("On a factual challenge, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." (internal quotation and citation omitted)).  The court "may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").  Here, Defendants raise a factual challenge to the Court's subject matter jurisdiction.  *See* Defs.' Reply at 5.

When faced with a factual challenge, a district court retains "considerable latitude in

9

devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Prakash*, 727 F.2d at 1179. Regardless of procedure, a court must give the plaintiff "ample opportunity to secure and present evidence relevant to the existence of jurisdiction," *id.* at 1180 (internal quotation and citation omitted), and must "assure that a full airing of the facts pertinent to a decision on the jurisdictional question may be given to all parties," *Herbert*, 974 F.2d at 198.

The United States Court of Appeals for the District of Columbia Circuit "has previously indicated that ruling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Id.* (citing *Collins v. New York Cent. Sys.*, 327 F.2d 880 (D.C. Cir. 1963)). The Circuit has also held that while a district court "may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard." *Id.* This "ensures that, where jurisdictional defenses and the merits of a dispute overlap, the jurisdictional defense is not used… to short-circuit the factual development and adjudicative process to which a plaintiff is generally entitled." *Am. Oversight v. U.S. Dep't of Veterans Affs.*, 498 F. Supp. 3d 145, 153 (D.D.C. 2020) (RDM). Accordingly, courts in this Circuit have, in certain situations, denied motions to dismiss and deferred consideration of the jurisdictional question until later in the litigation after the parties have had an opportunity to develop a more complete record. *E.g.*, *id.* at 148; *ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing and Mechanical Offs., Inc.*, No 16-54 (EGS)(DAR), 2020 WL 1905132, at *10 (D.D.C. Apr. 17, 2020).

### C. The Record Regarding Whether Pavilion Was a Government Contractor is Not Sufficiently Developed

The Court finds that the record here is not sufficiently developed as to whether Pavilion was a government contractor under 41 U.S.C. § 4712 and, ergo, to determine whether there is

federal question jurisdiction.

To begin, the Court believes there is ambiguity regarding the kind of official relationship that existed between the State Department and BTG.  Plaintiff claims that "[i]n the context of the State Department's legal authority to appoint and cooperate with a private partner to operate the World's Fair Pavilion, the Letter of Intent signified a contract."  Pl.'s Opp'n at 10.  Plaintiff states that Pavilion "never reached th[e] stage" at which "State would sign a binding Memorandum of Agreement with the selected organization," but that "[t]he phase one agreement between State and Pavilion is also a grant" and that "Pavilion was operating under a federal contract or grant."  *Id.* at 10–11.  Plaintiff continues that "Section 4712 should be construed to protect whistleblowers during preliminary phases like the LOI describes so that whistleblowers will come forward to identify corruption as early as possible."  *Id.* at 11.  Per Plaintiff's own averments, it is unclear whether there existed a contract, a grant, or something else in "the early phases of the contracting process", *id.* at 12, between BTG and the State Department.

Defendants' primary argument is that because Plaintiff does not allege that the State Department ever entered into a contract with Pavilion, Pavilion was not a government contractor.  Defs.' Mot. at 9.  Defendants explain that because the State Department issued the LOI to BTG and not Pavilion, that agreement was not one between the State Department and Pavilion.  *Id.*  Defendants introduce additional evidence to demonstrate that an agreement existed only between State Department and BTG.[2]  For example, Defendants argue that "[i]n his sworn deposition

---

[2] Defendants present two other pieces of evidence: a media note issued by the State Department, included as Exhibit B, and Board Minutes from a meeting of the Board of Directors of Pavilion, included as Exhibit D.  *See* Defs.' Mot. at 10; *id.* Exs. B, D.  Plaintiff contends that the Court "should not consider" this information "because neither are authenticated.  Defendants have not identified the persons who wrote these documents, when they were written, and whether the individual writing the documents had personal knowledge of the facts asserted in the documents.

testimony taken on February 10, 2022" in a related case,[3] "Plaintiff acknowledged that Big Things Group is the owner of the bid submitted to the State Department to which the State Department subsequently issued its LOI." Defs.' Mot. at 12. An excerpt of the transcript from that testimony includes Plaintiff testifying that "[t]he intent was for BTG to own the IP of the bid… and submit the bid under BTG's name, so BTG owned the bid—owns the bid, I guess, to this day, still owns it—submit to the State Department, and then once the State Department approved it, which they did, BTG would then, in effect, novate it to the nonprofit to run, which was Pavilion USA 2020." Defs.' Mot. Ex. E. Plaintiff alleges in his Complaint that this novation never occurred per the State Department's indication it was unnecessary. *Id.* ¶ 23.

In his Opposition, Plaintiff points to contrary evidence for the proposition that Pavilion *was* a government contractor within the scope of 41 U.S.C. § 4712. First, Plaintiff states that "as the party that carried out the functions of the Letter of Intent, Pavilion USA was at least a subcontractor or subgrantee." Pl.'s Opp'n at 8. Next, Plaintiff argues that "Pavilion USA was a *de facto* party to the Letter of Intent" and that the State Department had that understanding. *Id.* at 9. Plaintiff contends that because the RFP stated that certain key activities had to be carried out by a tax-exempt non-profit organization and the bid stated that the non-profit Expo Group 2020 (later renamed Pavilion) would carry out the project, the State Department recognized Pavilion as BTG's successor. *Id.* at 9 (citing Compl. ¶¶ 18–19). Plaintiff also cites to a letter from a State Department official that referenced "Pavilion USA 2020, the organization implementing the U.S. pavilion at Expo 2020 Dubai" and that authorized Pavilion "to issue

---

Plaintiff has had no chance to cross-examine that individual." Pl.'s Opp'n at 13. Should Defendants want to rely on these exhibits in the future, these issues should be addressed via potential jurisdictional discovery and authentication.

[3] *District of Columbia v. Pavilion USA 2020, Inc., Frederick Bush & Alan Dunn*, Civ. Act. No. 2021 CA 001855 B (D.C. Super. Ct. 2020).

subsequent appointment letters for consultants or contractors engaged by Pavilion USA 2020 to implement the U.S. pavilion." Compl. Ex. 2.  The letter concludes with a note "to ensure the project starts and continues to run smoothly." *Id.*  Defendants argue that "[t]he prospective nature of the language used by [the State Department official] in this letter further contemplates a future, formalized contractual relationship that never occurred" between the State Department and Pavilion.  Defs.' Mot. at 10.  Finally, Plaintiff argues that his "allegations plausibly describe BTG and Pavilion USA as so closely related that they were a single employer, also known as an integrated enterprise" before outlining the legal elements to establish an integrated enterprise.  Pl.'s Opp'n at 9.  Plaintiff rightly points out that "[t]he test for determining whether separate corporations are a single employer is 'fact intensive,' and 'courts understandably have been reluctant to dismiss affiliated corporate entities… prior to discovery.' *Id.* at 10 (citing *Sears v. Magnolia Plumbing, Inc.*, 778 F. Supp. 2d 80, 85 (D.D.C. 2011) (HHK)).

In reviewing the parties' arguments and the record before it, the Court finds there are disputed facts regarding whether Pavilion was a government contractor that impact whether Plaintiff is within the scope of § 4712 to bring a claim, which ultimately bears on whether the Court has subject matter jurisdiction.  Accordingly, the Court finds that it is inappropriate to decide the jurisdictional issue at this time before the parties have additional opportunity to secure and present evidence.

### D. Recommendation of Jurisdictional Discovery

"There is no doubt that jurisdictional discovery is permissible in cases where the defendant challenges the factual basis of the court's subject matter jurisdiction." *Wyatt v. Syrian Arab Republic*, 225 F.R.D. 1, 2 (D.D.C. 2004) (RMU) (citing *Phoenix Consulting Inc.*, 216 F.3d at 40); *see also Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 17 (D.D.C. 2005) (JDB).  The

Court recommends that the parties engage in jurisdictional discovery limited to the question of whether Pavilion was a government contractor.  This might include information on whether there was a contractual relationship between Pavilion and the State Department, and if not, whether there was in fact a contractual relationship between BTG and the State Department, what the relationship was between BTG and Pavilion, and any other related questions that will bear on the Court's ability to satisfy itself of federal question jurisdiction.

A court can approve such request for discovery upon a motion under Federal Rule of Civil Procedure 56(f), in which a plaintiff should indicate "what facts additional discovery could produce that would affect [the court's] jurisdictional analysis."  *Cheyenne Arapaho Tribes of Oklahoma v. United States*, 558 F.2d 592, 596 & n3 (D.C. Cir. 2009) (citation omitted); *see also Intelsat Glob. Sales and Mktg., Ltd. v. Cmty. of Yugoslav Posts Telegraphs & Telephones*, 534 F. Supp. 2d 32, 34 (D.D.C. 2008) ("[A] court should allow for limited jurisdictional discovery if a plaintiff shows a nonconclusory basis for asserting jurisdiction and a likelihood that additional supplemental facts will make jurisdiction proper.").

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES WITHOUT PREJUDICE Defendants' [13] Motion to Dismiss.  The Court recommends that the parties engage in limited jurisdictional discovery.  An appropriate Order accompanies this Memorandum Opinion.

                                             /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge